## Commonwealth *v.* Stosny, Appellant.

Argued March 8, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Hyman A. Guth,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY RHODES, J., April 19, 1943:

Appellant was convicted of involuntary manslaughter. Deceased was struck by appellant's automobile while it was being operated by him on one of the streets of Philadelphia. The court below refused to grant a new trial; this appeal from the judgment of sentence followed.

The evidence is insufficient to sustain the conviction. Appellant's demurrer to the evidence at the close of the Commonwealth's case should have been sustained. The evidence produced by appellant in his own behalf—there being no rebuttal thereto by the Commonwealth—in connection with the evidence in the case when the demurrer was entered will not support the verdict of guilty. *Com. v. Marino,* 142 Pa. Superior Ct. 327, 331, 16 A. 2d 314.

The accident happened on Allegheny Avenue between Front Street and Hope Street, about 12:20 A.M., on February 12, 1942. For present purposes, Allegheny Avenue extends east and west, and is 54 feet from curb to curb. Double street car tracks are in the middle of the street. Front Street runs north and south and crosses Allegheny Avenue. Hope Street is 150 feet west of Front Street, and also runs north and south being 20 feet from curb to curb. It intersects Allegheny Avenue from the north only. The

frontage on Allegheny Avenue between Front and Hope Streets is less than the average city block. At this point Allegheny Avenue is poorly lighted; beyond Front Street the first street light is somewhere west of Hope Street.

After the accident deceased was found lying on the north side of Allegheny Avenue 12 feet south of the north curb line and on a line with the center of Hope Street.

Appellant was the only eyewitness to the accident. He testified at the trial; and a statement made by him to the police officers shortly after the accident was introduced in evidence by the Commonwealth. According to his own testimony and his statement, he was driving west on the north side of Allegheny Avenue; the trolley tracks were to his left and the north curb line to his right. In his statement he said the right front bumper of his car struck a man when near Front Street, but in reply therein to the specific question, "Where did this accident happen in relation to Front Street?" his answer was, "I couldn't tell you that." He testified that he was not familiar with the streets, but he thought the point of contact was 30 or 40 feet from Hope Street. Excessive speed is not involved; the Commonwealth concedes that speed is out of the case. And it is undisputed that the braking mechanism of appellant's automobile was in excellent condition, and that the headlights were on. Appellant stated that when he first saw deceased the latter was so close to the right front of appellant's car that it was impossible to avoid striking him; that "the bumper struck his legs and he flew over top of the hood, hit the hood, and bounced off the side." He also testified as follows:

"Q. Well, did you see the man before you struck him? A. Yes, I saw him when he was just about 10 feet away from the car, before I had a chance to step on the brakes, so I had struck him already. ...... Q.

You said you saw this man 10 feet away from you; in what direction was he from you when you first saw him, was he ahead of you, to the left of you, or to the right of you? A. He was to the right of me. Q. Was he also ahead of you? A. Ahead of me, yes. Q. Ahead of you and to the right? A. Yes. ...... Q. Where was he on the highway when you first saw him? A. About 12 feet from the curb. Q. Was he moving or standing still? A. I only saw him when he was standing still in front of my car. Q. Only saw him when he was standing still 10 feet away from you? A. That is right. Q. To the right and to the front of you? A. Front of me. Q. Well, then, how did your car come in contact with him; if he was standing still and you were going straight ahead, how did you meet him? A. I didn't see him until I was too close to him to stop. Before I had a chance to step on my brakes I had already hit the man. I tried to stop, but it was too late. Q. Was this man in your line of vision? A. I didn't see him until he was practically at the radiator of the car. ...... A. ...... He threw his hands in the air before he was struck. Q. Where was he then? A. As I told you, about 10 feet from the front of the car— the front end of the right bumper, right side. Q. Was he directly in front of you, was he in line with your car then? A. No. He was on the right side. Q. Then why couldn't you avoid him? Why couldn't you turn away from him? A. It all happened so fast. ...... A. I don't know whether he was moving. It all happened so fast."

Two policemen testified that appellant had the odor of alcohol on his breath, that he was not intoxicated, that he showed no visible effects of drinking, that "there was nothing wrong with him," and that his mind functioned well. Appellant admitted he had three glasses of beer earlier in the evening; this fact alone does not prove anything that is relevant. There is an entire absence of evidence that appellant was under the influence of alcoholic beverages to any extent at the

time of the accident. Conjecture cannot take the place of proof. See *Landy v. Rosenstein et al.,* 325 Pa. 209, 216, 188 A. 855.

We are of the opinion that the evidence does not measure up to the standard of proof required to sustain a conviction for involuntary manslaughter. We find in this case no more than that between intersections [1] appellant's car struck the deceased, that immediately previous appellant first saw the deceased 10 feet in front and to the right of his car, that he attempted to stop but was unable to do so because of the short distance involved. Consequently, it is impossible to determine what the deceased was doing before appellant saw him. It is very probable that deceased walked into appellant's automobile from the north side of Allegheny Avenue, without any fault on the part of appellant, and that at the time of contact the deceased would have appeared to appellant to have been standing still. Appellant's car was being operated between the car tracks and the north curb of Allegheny Avenue, and therefore the distance between the curb and the car would have been but a few feet. Moreover, there is nothing in the record which would warrant a finding that appellant saw or should have seen the deceased in time to avoid striking him; and the mere happening of the accident does not prove that appellant was even slightly negligent. *Sajatovich v. Traction Bus Co.,* 314 Pa. 569, 572, 172 A. 148.

The facts in *Wenhold v. O'Dea,* 338 Pa. 33, 12 A. 2d 115, a civil case, are somewhat analogous. The evidence there was that an automobile driven by the defendant struck the deceased, at night, about fifteen seconds after the latter alighted from his automobile and stepped on the highway. It was held impossible to infer from the evidence that the defendant saw or should have seen deceased before the accident in order to avoid

---

[1] See *Com. v. Hatch,* 149 Pa. Superior Ct. 289, 292, 27 A. 2d 742.

striking him, and that there was no question of negligence of the defendant to present to the jury. If there can be no recovery in a civil suit of this nature, certainly there is no criminal liability. See, also, *Skrutski v. Cochran et al.,* 341 Pa. 289, 19 A. 2d 106; *Martin v. Marateck,* 345 Pa. 103, 106, 107, 108, 27 A. 2d 42.

The essence of the crime of involuntary manslaughter is the death of a human being "in consequence of an unlawful act." Act of March 31, 1860, P. L. 382, sec. 79, as amended by the Act of April 11, 1929, P. L. 513, sec. 1, 18 PS §2226; *Com. v. Aurick,* 342 Pa. 282, 286, 19 A. 2d 920. In *Com. v. Micuso,* 273 Pa. 474, 478, 117 A. 211, 212, "Death caused by recklessly driving a motor vehicle," is given as an example. See, also, *Com. v. Ochs,* 91 Pa. Superior Ct. 528. The proof of negligence that will support the charge of involuntary manslaughter must be something more than the slight negligence which will support a civil action for damages based on negligence; but if appellant, at the time and place in question, was operating his automobile in a rash and reckless manner, he would have been guilty of an unlawful act and responsible for the consequences. *Com. v. Aurick,* supra, 342 Pa. 282, 289, 291, 19 A. 2d 920. We do not believe that an unlawful act may be inferred from appellant's conduct and the circumstances narrated by the evidence; and no such inference is to be drawn from inconclusive testimony where the inference is also one of the commission of a crime. This is especially so here; as we have said, it is reasonably probable that deceased may have heedlessly walked into appellant's automobile. The evidence certainly affords no basis for an exclusive implication of wrongdoing. The evidence being insufficient to support a verdict of guilty of involuntary manslaughter, the judgment and sentence will therefore be reversed.

The first and eighth assignments of error are sustained.

The judgment is reversed, and the defendant is discharged.