Balla *v.* Sladek, Appellant.

86.

Argued October 4, 1954.    Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Sanford M. Chilcote,* with him *David B. Fawcett, Jr.,* and *Dickie, McCamey, Chilcote, Reif & Robinson,* for defendant borough, appellant.

*A. H. Rosenberg,* with him *Rosenberg & Rosenberg,* for individual defendant, appellant.

*Abe R. Cohen,* with him *Theodore H. Schmidt* and *Crone & Cohen,* for plaintiff, appellee.

*Chauncey Pruger,* with him *James R. Orr* and *Reed, Smith, Shaw & McClay,* for additional defendants, appellees.

OPINION BY MR. JUSTICE ARNOLD, March 14, 1955:

Plaintiff sued in trespass for injuries suffered by her in a collision of the automobile in which she was a guest passenger. Original defendants are the Borough of East Pittsburgh and the estate of the owner and operator of the automobile. East Pittsburgh brought in the two railroads as additional defendants. The jury returned a verdict for plaintiff against the original defendants but in favor of the additional defendants.

East Pittsburgh appeals from the refusal of its motions for judgment n.o.v. and new trial, contending: (1) that no negligence in the borough was established, and that if negligent, it was not proved the proximate cause of the injuries; (2) that a new trial should be granted because (a) the court erred in excluding testimony as to plaintiff's declarations offered as admissions and tending to show contributory negligence, (b) the court erred in its refusal of a motion to withdraw a juror because of prejudicial remarks by counsel for the estate in his closing to the jury, and (c) the verdict in favor of the two railroads was against the evidence and the weight of the evidence.

The estate appeals from the refusal of its motions for judgment n.o.v. and new trial, and contends that the evidence shows due care was exercised by the deceased; that plaintiff's counsel made prejudicial remarks in the jury's presence; and that the court erred in refusing to consolidate for trial the instant case

and the action brought by the estate against the Borough of East Pittsburgh.

The evidence established the following facts: The improved portion of Linden Avenue, in East Pittsburgh, is approximately thirty feet wide, and has two sets of trolley tracks on the southerly portion with sufficient room on the northerly portion for vehicles to travel without being on the rails. Immediately adjacent to the northern side of the improved cartway is a six inch curb, next to which is a six foot sidewalk. A single line of railroad ties, six or seven inches high and nine inches wide, runs along the northerly side of the sidewalk. North of the ties is a level portion of ground, some four feet in width, beyond which there is a hillside running downward for approximately 150 to 175 feet at an approximate angle of 45 degrees. This ends at a ditch which flanks the railroad tracks of the defendant railroads. There is no barricade at the top of the hillside.

At approximately 2:00 A.M. on April 15, 1950, the decedent, with plaintiff as his guest passenger, was operating his automobile westerly on the northern side of the improved cartway. No more than three or four vehicles were travelling on the street at that time. He was proceeding down hill at a speed of approximately 25 to 30 miles per hour, with the car's wheels straddling the northernmost rail of the trolley tracks. Although it was damp, there had been no rain or snow, and it was clear. Decedent's automobile was a comparatively new Lincoln, and apparently in good condition. As he was thus proceeding, suddenly and for an unexplained reason, his automobile turned to the right, ran over the curb, sidewalk and ties, continued on the four foot portion of ground in a northwesterly direction for a few feet, and then down the hillside. The automobile did not overturn, traversing the 160 feet

on its wheels until it collided with the ditch on defendant railroad's right of way. Decedent was almost instantly killed, and plaintiff was seriously injured.

Although the sidewalk had been built by the railroad, which also placed the ties beside it, the proof was that the full right of way of Linden Avenue extended northerly some seventy feet beyond the improved cartway—that is, a large portion of the hillside belonged to the Borough of East Pittsburgh. The construction of the sidewalk was done at the borough's request, and the ties were laid to prevent erosion of the hillside. Further, the borough exercised control of the land, as evidenced by its "No Dumping" signs thereon.

Under the facts, it cannot be held as a matter of law that the decedent was not negligent, and therefore the court did not err in refusing judgment n.o.v. as to the estate. The presumption that decedent used due care was overcome by testimony sufficient to establish negligence, if believed by the jury. There was no matter introduced to exculpate him, and the facts made out a case for the jury. Cf. *Knox v. Simmerman*, 301 Pa. 1, 151 A. 678; *Maltz v. Carter*, 311 Pa. 550, 166 A. 852; *Kotal, Admr. v. Goldberg, Admrx.*, 375 Pa. 397, 100 A. 2d 630. Also, whether the borough was negligent in not providing barricades at the hillside edge was a question properly left to the jury. "If a public street is dangerous by reason of its proximity to an embankment or precipitous decline, the city is liable for its failure by the erection of barriers or other devices to guard travelers from injury, in the use of the highway, who exercise reasonable care for their own safety": *Rasmus v. Pennsylvania Railroad Company*, 164 Pa. Superior Ct. 635, 638, 67 A. 2d 660. See also *Winegardner v. Springfield Township*, 258 Pa. 496, 102 A. 134; *Shipley v. Pittsburgh*, 321 Pa. 494, 184 A. 671.

Defendant-estate also complains that counsel for plaintiff made prejudicial remarks by virtue of which it was entitled to withdrawal of a juror. With this we cannot agree. Counsel had been directed by the court, in chambers, as to the questions he might put to his plaintiff, in view of the Act of 1887, P.L. 158, 28 PS §322.[1] In questioning plaintiff as to events on the evening of the accident, an objection, based on the Act, was raised by the attorney for the estate. Thereupon plaintiff's counsel stated: "Well, I would like to get the testimony of this party who knows more about the accident than anybody on the record." The court refused the motion for withdrawal of a juror, but immediately explained the effect of the Act to the jury, and sustained the objection to the question. The trial judge destroyed the harmful effect of the remark, if it had any. These matters are within the trial court's discretion, and it will not be interfered with except for an abuse: *Clark v. Essex Wire Corporation*, 361 Pa. 60, 65, 63 A. 2d 35.

The refusal to consolidate the actions for trial was also an exercise of discretion resting in the trial court, and will not be reversed: Pa. R.C.P. 213. As stated by the court, the jury might have been influenced by sympathy for the decedent to the prejudice of the defendants in the instant case, and it was for the court to determine whether or not this could happen.

East Pittsburgh next complains that the court should have withdrawn a juror because of remarks by

---

[1] The Act provides: "Nor, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed . . . to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing . . ., or any other person whose interest shall be adverse to the said right of such deceased . . . be a competent witness to any matter occurring before the death of said party . . ."

counsel for the estate in closing to the jury, and therefore should have a new trial on this ground. Counsel for the estate stated to the jury that for some 25 years the borough and the railroads had permitted the hillside to remain open and without barricades, and that this amounted practically to the existence of an "open grave." Upon complaint made by counsel for the borough, estate's counsel apologized that it was not intended as inflammatory, and the court admonished the jury to "disregard the use of the term 'open grave' . . . and . . . make your decision calmly and coolly, solely upon the facts and the evidence." If there was anything prejudicial in the remark, the court has cured it, and was well warranted, in its discretion, in refusing to withdraw a juror on that account.

Nor can a new trial be granted to the borough on the ground that the verdict in favor of the additional defendants was against the evidence or the weight of the evidence. Under the testimony, it was for the jury whether these defendants were under any duty or violated any duty. The borough itself established that the street was 100 feet in width, which extended some 60 feet beyond the edge of the hillside. It also established that the sidewalk was built by the railroad at the borough's request, and that the ties were placed by the railroad in response to the borough's demand that it protect the slope from erosion, and not as a barricade. Another factor upon which the jury could rightfully determine that the borough, and not the railroads, controlled the premises, was that the land was posted with "no dumping" signs by the borough. It was clearly a question for the jury, determined in favor of the railroads, and we cannot disturb that verdict.

Lastly, the borough complains that the court erred in refusing to permit testimony offered to establish contributory negligence on the part of the plaintiff.

This testimony was to be given by the chief of police of the borough and by the captain of the police of the railroad, and concerned an interview between them and plaintiff at the hospital in which she was confined, which interview occurred two days after the accident. The offer by counsel was to prove by these witnesses that they interviewed plaintiff, who informed them that on the night of the accident she had gone with decedent to a drinking place, that "while there for some time they danced and she drank highballs; that he, Mr. Sladek, drank beer, and that after they had been there for some time they left and were on their way home when this accident happened." The court excluded the testimony under the Act of 1887, P.L. 158, 28 PS §322, and on the ground that it was merely hearsay.

Under the Act, the reason for rejection of the testimony necessarily is the incompetency of the person, not the testimony. And these persons could be incompetent only if they had an interest adverse to the decedent. Did these witnesses have such an interest? Would they, if the verdict were in favor of the borough, gain as a result? We think not. The fact of their employment by the corporate defendants does not make them parties to the action, nor does it give them an interest adverse to the decedent as contemplated by the Act. A verdict for or against these defendants does not change their status in the least. Cf. *Groome's Estate,* 337 Pa. 250, 11 A. 2d 271. They were merely agents of the borough and railroad, not "parties to the thing" including the decedent and their employers; their interest was not "a fixed vested interest" such as would cause them "to gain or lose, as the direct legal operation and effect of the judgment": *Braine v. Spalding,* 52 Pa. 247, 248. Nor can it be doubted that the plaintiff's statements to them were declarations against interest.

But the testimony was properly excluded. Though fully established, the facts offered to be proved were not sufficient to convict plaintiff of contributory negligence. The fact alone that the defendant "had been drinking during the course of the evening preceding the accident" is not sufficient. There was no offer to prove intoxication; and drinking intoxicating liquors, in itself, does not prove unfitness to drive. See *Landy v. Rosenstein,* 325 Pa. 209, 188 A. 855; *Commonwealth v. Stosny,* 152 Pa. Superior Ct. 236, 31 A. 2d 582.

Judgments affirmed.

———

OPINION CONCURRING AND DISSENTING IN PART BY MR. JUSTICE MUSMANNO:

I concur in that part of the Majority decision which affirms the verdict against the Borough of East Pittsburgh, but I dissent from that part which holds the verdict against Anna Y. Sladek, Administratrix of the Estate of William J. Sladek, deceased. The Majority says: "The presumption that decedent used due care was overcome by testimony sufficient to establish negligence, if believed by the jury. There was no matter introduced to exculpate him, and the facts made out a case for the jury." This is a strange statement. There was considerable matter introduced to exculpate William Sladek. Samuel Whitman, called by the estate defendant, testified: "Q. How fast would you say you were going? A. I would say I couldn't go over 20 miles an hour going around that bend up there. Q. About how fast was the Sladek car moving? A. Didn't look much faster than I was going, to me. Q. On what side of the road was it going on? A. On the right side. Q. *And from what you could see of the*

*Sladek car was there anything unusual about its operation?*  A. No, I didn't see anything." *

Even the witnesses called by the plaintiff introduced matter exculpating Sladek from negligence. Hughie Cassidy testified that Sladek was travelling at a normal rate of speed: "Q. When you said that the car was going about—what did you say? A. 25, 30 miles an hour. Q. That would be your best judgment as to what the speed was at that time? A. Right. Q. *Which you would describe as a normal speed, is that it?* A. *I would, yes.* Q. And would that be the normal speed generally of cars that would stop there and pull out and go on down the hill? A. I believe so."

Jerome Sanders, also called by the plaintiff, testified that he was only 50 feet away from the Sladek car when it started over the hill and that Sladek was operating his car "in a proper and normal manner": "And during that time was it being operated as you said, on direct examination, approximately 15 or 20 miles an hour? A. That is correct. Q. On its right-hand side of Linden Avenue? A. That is correct. Q. *And so far as you could see in a proper and normal manner, is that right?* A. *That is also correct.*"

There is nothing in the record to show why Sladek's car left the highway and plunged over the embankment. The witness Cassidy seemed to suggest that possibly Sladek's car slid because of contact with one of the rails on the street car track: "Q. What was the first thing that was unusual as you were watching it? A. Well, I think one of the wheels must have touched the track because—one of the wheels must have touched against the track because it threw it a little bit. Q. Did you see that? A. I could see the little weave like that. That's all there was, a small weave. Q. In other

---

* Italics throughout, mine.

words, there was a little weave, is that it? A. Yes."
But, according to the standard laid down in the case
of *Riley v. Wooden,* 310 Pa. 449, this would not have
been enough to hold the Estate of Sladek. This Court
said in that case: "It is not alleged that he was incom-
petent to drive or cognizant of any defect in the car.
It is clear that the cause of upsetting was not exces-
sive speed, . . . Defendant did not leave the road in con-
sequence of a negligent rate of speed or of inadequate
observation, as in Knox v. Simmerman, 301 Pa. 1, re-
lied on by plaintiffs. The accident may have been due
to the slippery condition of part of the surface of the
road, . . . or to some suddenly occurring defect in, or
temporary failure of, the machinery of the car, with
nothing in the record to charge defendant for such con-
sequences."

The Majority says that the "presumption that de-
ceased used due care was overcome by testimony suffi-
cient to establish negligence." But the Majority does
not indicate what that testimony was. The presump-
tion of due care is a very important element of proof
and it cannot be taken out of a case with a wave of the
hand. In *Travis v. Pennsylvania Railroad Company,*
377 Pa. 537, we said: "There was no testimony as to
what Travis did just before committing himself to the
crossing, but the law assumes, in the absence of any-
thing to the contrary, that one who meets sudden
death exercised the care of a reasonably prudent per-
son. This is not a makeshift abstraction. It is a legal
presumption based on the tenacious and objective
reality that life is sweet and death is cruel. . . ."

The Majority cites the case of *Kotal v. Goldberg,*
375 Pa. 397, in support of its holding that Sladek was
proved negligent. The facts in the *Kotal* case are as far
removed from the facts in the case at bar as Mercury
is from Neptune. In the *Kotal* case we specifically

said: *"Speed is the burden of this particular lawsuit."*
Some idea of the recklessness with which the defendant
car was operated in that case can be gathered from an
excerpt from that Opinion: "After passing the heavy
truck-trailer, the Studebaker [defendant car] continued
at its same pace [60 miles per hour], but when the
highway bent to the right, the Studebaker failed to
take the curve, left the concrete and plunged into the
middle untravelable space, knocking over several re-
flector posts. Its velocity unabated, it upset, righted,
and turned over several times until it reached the mid-
dle of the eastbound lane when the vagaries of mo-
mentum sent it cartwheeling back across the medial
strip and on to the westbound lane where it finally
came to a stop, lying on its roof with wheels in the air.
In the violent capsizings of the car, Miss Goldberg
was thrown to the concrete of the eastbound lane and
Mrs. Kotal to the berm of the westbound lane, both
suffering mortal injuries resulting in practically in-
stantaneous death." In the case at hand the car did not
upset and when it stopped at the bottom of the hill,
the driver was still behind the steering wheel. There
are many other differences between the *Kotal* case and
this case which it is unnecessary to delineate here.

The Estate of William Sladek did itself bring a
suit against the Borough of East Pittsburgh. Counsel
for the Estate endeavored at pre-trial to have that suit
consolidated for trial with the instant suit. According
to the Majority, the lower court refused the consolida-
tion on the basis that the "jury might have been in-
fluenced by sympathy for the decedent to the preju-
dice of the defendants in this case." The Majority
finds this to be a perfectly good reason although it
seems to me it fails to answer to any semblance of
logic. If sympathy for the decedent would have in-
fluenced the jury in the Estate's behalf, how is it that

in this case the jury found against the Estate? Isn't the purpose of a trial to ascertain the facts and on those facts render justice? I can see how two cases with different plaintiffs might have caused confusion in the trial and on that basis, a separation might have been justified. The reason given for the separation however, in my opinion is legally insupportable.