Ellis C. ROSA, Administrator of the Estate of Augustus Howard Cooper, Deceased, Appellant

v.

CITY OF CHESTER, PA.

No. 13030.

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1960.

Decided May 16, 1960.

Rehearing Denied June 10, 1960.

George W. Thompson, Upper Darby, Pa. (Baile, Thompson & Shea, Upper Darby, Pa., on the brief), for appellant.

Melvin G. Levy, Chester, Pa. (Albert Blumberg, Chester, Pa., McClenachan, Blumberg & Levy, Chester, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is a survival action [1] brought by the administrator of the estate of Augustus Howard Cooper against the City of Chester, Pennsylvania.[2] The jury returned a verdict in favor of the plaintiff for one dollar.

The administrator's decedent died when an automobile in which he was a passenger plunged from the dead-end of Norris Street—a public street maintained by the City of Chester—into the Delaware River. The accident occurred shortly after 2 A.M. on May 20, 1955.

The plaintiff's theory and proofs were that the City of Chester was negligent in that another car had driven into the river at the same place in the preceding year; that there was no barrier of any sort between the street and the river, nor were there any warning signs or adequate lighting of the street.

The City contends that the accident was a consequence of the driver's sole negligence. The plaintiff called as his witness the driver of the automobile— Alfred J. Thompkins—and asked him fourteen short questions identifying him as the driver and describing the circumstances of the accident and the condition of the street. On cross-examination, which extended over almost one-quarter of the transcript, the defendant asked a long series of questions concerning the purchase by the decedent and another passenger of a bottle of whiskey and visits by the driver to "bars and taprooms." [3] These questions were continu-

ally objected to by the plaintiff but the objections were overruled.[4] However, after all of the evidence was submitted the trial judge, in ruling on requests for charge stated to counsel in the presence of the jury:

"* * * there is no evidence in this case which would warrant the jury in finding unfitness on the part of either the driver of the car or the decedent.

"So, gentlemen, I am ruling that out of the case completely, and you will guide yourselves accordingly in your arguments to the jury."

At the end of the cross-examination of the driver, Thompkins was asked, over objection, whether he had ever been convicted of the felony of dispensing and possessing narcotic drugs and Thompkins answered that he had been convicted in March, 1957.

The evidence showed that the decedent was twenty years old at the time of his death; he had always been in good health; and had been a member of the Y.M.C.A. and active in church work. He was graduated in June, 1953 from Chester High School where he had been a member of the student council. During three of his summer vacations while attending high school, he had obtained temporary employment. After graduation he anticipated entry into the military service and obtained "pick-up" jobs such as cutting grass, tending gardens and washing windows. However, in the summer of 1954 he went to work for a laundry in Atlantic City, New Jersey until February, 1955. While in Atlantic City he lived with his aunt and paid for his own room and board.

From the last week of February, 1955 until the time of the accident the decedent was unemployed. Just prior to the

1. Pennsylvania Survival Act of April 18, 1949, P.L. 512, 20 P.S. §§ 320.601, 320.-603. No action for wrongful death was brought.

2. Jurisdiction is based on diversity of citizenship, the administrator being a citizen-resident of Franklinville, New Jersey.

3. There were twenty-two questions in which reference to the whiskey or to bars occurred.

4. At one point the Court said, "* * * I think you are going a little too far. * * *"

time of his death he expressed an intention to return to Atlantic City and resume employment with the laundry.

During 1954 decedent's gross earnings were $1,550.00. He earned $127.00 between January 1, 1955 and May 20, when he died.

The trial judge charged the jury that under Pennsylvania law, if liability of the City were found, damages would be measured as the present value of the decedent's "loss of earning power" less what it would have cost him to maintain himself in housing, clothing, food, and some recreation for the periods from the time of death to the end of the trial and from that date to the end of the decedent's normal life expectancy.

After the jury retired it returned with the question: "As a result of your charge to the jury may we come out with a verdict for the plaintiff with no dollar award because the maintenance would about equal the total earnings?"

The trial judge answered: "Eliminating the word 'about', if you found that the cost of maintenance would equal the earnings, you would then have found that the plaintiff had not met his burden of proving damages and your verdict would be in favor of the defendant. If it is 'about' and there is any surplus of earnings over cost, your verdict would be for the plaintiff in that amount."

After retiring again the jury asked the following question: "May we give to the plaintiff and only award one dollar as damages?" The trial judge answered: " * * * you may give any amount which you feel is justified by the evidence, even one dollar."

The jury then returned a verdict in favor of the plaintiff in the sum of one dollar.

The plaintiff moved for a new trial; the defendant renewed its previous motion for a directed verdict. The trial judge concluded that the jury could reasonably have found the City liable and denied defendant's motion.

The plaintiff's motion for a new trial, denied by the trial judge, was based on his insistence that (1) the verdict was grossly inadequate and (2) the inadequacy was explained by the erroneous admission of evidence concerning whiskey and narcotics.

On this appeal the plaintiff contends that the verdict was so inadequate that "the jury must have been influenced by partiality, passion or prejudice or by some misconception of the law on the evidence" and as a result a new trial as to damages should be awarded. In addition, plaintiff contends that the cross-examination of Thompkins on matters which created an inference that decedent or others had been drinking intoxicating beverages or were intoxicated was prejudicial and instrumental in misleading the jury on the questions of damages. Additionally, the cross-examination was erroneously permitted to exceed the scope of direct examination. Finally, plaintiff contends that it was a prejudicial abuse of discretion to permit introduction of evidence on Thompkins' prior conviction.

The City of Chester contends that the award of a new trial for inadequacy of a verdict is within the discretion of the trial court and insists that such discretion in denying a new trial was not abused in light of the jury's careful consideration as manifested in its questions to the Court. The defendant states that "the instant case is squarely controlled by Voelkel v. Bennett, 3 Cir., 1940, 115 F.2d 102." [5] The City also contends that any error in permitting cross-examination with respect to alcoholic beverages was cured by the trial judge's statement in the presence of the jury and, in any event, was not prejudicial since the general verdict was in favor of the plaintiff. It also argues that evidence of Thompkins' prior conviction could not have prejudiced the plaintiff since it did not "add to any inference of bad conduct with which the decedent could be associated." Finally, the City maintains that if there

5. See also Martin v. Swift, 3 Cir., 1958, 258 F.2d 797 and cases there cited at footnote 7.

be a new trial it must be on all issues and not restricted to damages alone.

■ We are of the opinion that the judgment must be reversed and a new trial granted on the score of damages only because of the cross-examination with respect to alcoholic beverages.

The evidence with respect to a purchase of whiskey by the decedent on the night of the accident and visits by the driver, Thompkins, to several bars on the same evening was admitted on the theory that since the plaintiff had introduced evidence of an accident, the defendant was entitled to elicit the circumstances surrounding the accident. The evidence was offered for no other reason and, standing alone, was probative on no other ground. Although it has been held that the defense is entitled to introduce evidence of the character and habits of a decedent in order to minimize damages,[6] it has not been contended that the purchase of one bottle of whiskey is evidence of intemperate habits likely to reduce the earning capacity of an individual. Similarly, the evidence that the driver, Thompkins, consumed three glasses of beer more than five hours prior to the accident could not have been admitted to show negligence on the part of Thompkins. In Fisher v. Dye, 1956, 386 Pa. 141, at page 148, 125 A.2d 472, at page 476 the Pennsylvania Supreme Court said:

"* * * the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive. * * *"

And in Balla v. Sladek, 1955, 381 Pa. 85, at page 93, 112 A.2d 156, at page 160, the same Court said:

"But the testimony was properly excluded. Though fully established, the facts offered to be proved were not sufficient to convict plaintiff of contributory negligence. The fact alone that the defendant 'had been drinking during the course of the evening preceding the accident' is not sufficient. There was no offer to prove intoxication; and drinking of intoxicating liquors, in itself, does not prove unfitness to drive. See Landy v. Rosenstein, 325 Pa. 209, 188 A. 855; Commonwealth v. Stosny, 152 Pa.Super. 236, 31 A.2d 582."

See also Critzer v. Donovan, 1927, 289 Pa. 381, 137 A. 665.

The foregoing establishes that the Pennsylvania courts would consider the admission of the evidence of drinking intoxicating beverages by Thompkins and the purchase of whiskey by the decedent of a prejudicial nature, unless its probative value, in some way, outweighed the prejudice. As Wigmore has stated:

"* * * if certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an unfair prejudice to the opponent * * * there is good ground for excluding such evidence, unless it is indispensable for its legitimate purpose." VI Wigmore, Evidence (3rd edition) § 1864 (b), p. 491.

Compare Commonwealth v. Johnson, 1951, 368 Pa. 139, 145–146, 81 A.2d 569, where in a murder prosecution, it was deemed reversible error to admit photographs of the accused pointing to various objects at the scene of the crime. See pages 155–157 of 368 Pa., page 572 of 81 A.2d. In the present case the proof, via cross-examination, that the decedent had purchased a bottle of whiskey, had so little probative value with respect to the issues in the case—negligence of the City; superceding negligence of Thompkins; damages—that there can be little justification for its admission. The same can be said for the questions relating to the consumption of beer by Thompkins. Indeed, the trial judge attempted to erase from the case any question of negligence

---

6. Fleming v. City of Seattle, 1954, 45 Wash.2d 477, 275 P.2d 904 and cases there cited at page 910 of 275 P.2d.

based on unfitness to drive when it made the statement quoted above. As the Pennsylvania Supreme Court has said in another context:

> "The evidence led to nothing and ought to have been rejected. * * * But its very admission by the court gave it an appearance of importance to the jury that it ought not to have had, and it threw upon the plaintiffs the vexatious task of removing from the mind of that body a prejudicial impression that was totally foreign to the matter in hand." Velott v. Lewis, 1883, 102 Pa. 326, 334.

See also Cummings v. City of Williamsport, 1877, 84 Pa. 472, 478–479.

The City of Chester contends, however, that the decedent was not prejudiced by permitting these lines of cross-examination because "the general verdict was found in his favor by the jury." The answer to this is simply that the prejudice to the decedent arose not merely from the possibility that the jury might have found that the accident resulted from the driver's sole negligence, but also from the fact that this testimony may have influenced the jury to conclude, as it did, that decedent was the sort of individual whose earnings would never exceed his costs of maintenance. The evidence was not admitted for this purpose.[7] Even if it were, standing alone, this evidence could not have been admitted to show a defect in the decedent's character in mitigation of damages because (a) the drinking of beer by Thompkins hardly reflects on the decedent's character and (b) the mere purchase of one bottle of whiskey is insufficient to show intemperance since there is no evidence that decedent ever drank any of the whiskey, nor was there evidence of the consumption of whiskey on any other occasion. The City had to show " * * * a repetition of conduct as the thing to be proved." I Wigmore, Evidence (3rd Edition) § 203, p. 693. See McNutt v. United States, 8 Cir., 1920, 267 F. 670, 675, where it was held that evidence of "one or two" sales of liquor was insufficient to show the carrying on of an illegal liquor business.

Nevertheless, the trial judge in his opinion denying plaintiff's motion for a new trial, D.C.E.D.Pa.1959, 175 F.Supp. 11, at page 13 stated:

> "With respect to the testimony concerning drinking, the evidence did not establish that the driver of the car, Thompkins, was intoxicated. Plaintiff's argument in this regard would have merit except for the fact that the Court forcefully and forcibly, in the presence of the jury and prior to summation of counsel, eliminated entirely the question of intoxication from the case. It is a matter of judgment on the part of the Court as to whether that instruction was really effective. The Court is thoroughly satisfied that the instruction was sufficient to entirely eliminate the question from the case and that the jury did not consider it either in respect to liability or on the question of damages."

We are constrained to disagree with the learned trial judge. The context of his statement was this: immediately after the defendant rested, he began to rule on requests for charge. He had ruled on plaintiff's first six requests and when he reached the seventh (a request that the jury disregard any evidence or inference that the decedent or others had been drinking) the trial judge said:

> "No. 7. I will say to you gentlemen now, so that you will know how to argue this case, that there is no competent evidence in this case to show that the decedent had been drinking or that he had any knowledge that the driver of the car had taken the beer which he testified to on the stand, or that any knowledge of that had come to the decedent and there is no evidence in this case that would prove a degree of intoxication which would warrant the jury in finding unfitness on the part of

---

7. The plaintiff demanded an offer of proof but this was denied.

either the driver of the car or the decedent.

"So, gentlemen, I am ruling that out of the case completely, and you will guide yourselves accordingly in your arguments to the jury.

"No. 8 will be refused as stated."

We do not believe that this statement by the trial judge adequately protected the plaintiff's right not to have the evidence of drinking considered in determining damages.

In McJunkin v. Kiner, 1945, 157 Pa. Super. 578, at page 581, 43 A.2d 608, at page 609, allocatur refused, the Superior Court of Pennsylvania said the following with respect to the elimination of erroneously admitted evidence by instructions of the trial court to disregard:

"* * * the mere admission of improper evidence is not always ground for a new trial. Such an error may be cured and rendered harmless by striking out the evidence and eliminating it from the jury's consideration. Lilly v. Metropolitan Life Insurance Co., 318 Pa. 248, 177 A. 779; Mitchell v. Edeburn, 37 Pa.Superior Ct. 223. However, if the evidence is of a sort that tends to prejudice the minds of the jurors, the error is not cured by instuctions to disregard it. Hamory v. Pennsylvania M. & S. R. Co., 222 Pa. 631, 72 A. 227. Whether or not the error is corrected, therefore, involves a consideration of the circumstances under which the irrelevant evidence was given and its probable effect on the jury. Saunders et al. v. Commonwealth, 345 Pa. 423, 29 A.2d 62."

Thus in the Hamory case cited by the Superior Court, a witness in a condemnation case was permitted to give an opinion as to the value of land based on its value if it were subdivided into lots. This was error. The Court stated (222 Pa. at page 634, 72 A. at page 228):

"Nor was this error corrected by the learned trial judge in his charge to the jury. Where evidence has been improperly admitted which tends to prejudice the minds of the jurors, the error is not cured by an instruction in the charge to disregard it or to withdraw it from their consideration. * * *"

A case more similar to the present one is Lengle v. North Lebanon Township, 1922, 274 Pa. 51, 117 A. 403. In Lengle, children of a decedent brought an action against the Township for negligently causing the death of their father. The defendant improperly introduced evidence of the decedent's recovery under workmen's compensation. The jury found for the defendant. In granting a new trial the Supreme Court said (274 Pa. at page 53, 117 A. at page 404):

"No further suggestion was necessary to convince the jury the township should not be asked to pay more to the children or any sum in relief of the employer. Under such circumstances, plaintiff's chance of recovering anything was materially injured the moment the evidence was delivered. The court endeavored to correct its mistake in its charge, but the mischief was already done. Corrective instructions had little chance to get this idea out of the jurors' minds."

The following considerations lead us to the conclusion that the admission of the testimony with respect to the consumption of alcoholic beverages was not cured by the statement of the trial judge in his colloquy with counsel. First, it is clear that the Pennsylvania cases consider evidence of drinking alcoholic beverages, standing alone, to be "prejudicial". Fisher v. Dye and Balla v. Sladek, supra. Consequently, under the doctrine of the Hamory case, instructions to disregard could not cure the error. Second, the improperly admitted testimony was not an isolated unresponsive statement of a witness, see Cavness v. United States, 9 Cir., 1951, 187 F.2d 719, 722, but rather was an extended series of questions brought out by the defendant's attorney over strong objection. The effect of this evidence, therefore, became more difficult to

erase. Third, the trial judge's statement ruling the improper evidence "out of the case" dealt only with "unfitness", undoubtedly referring to negligence on the part of the driver and contributory negligence on the part of the decedent. The statement did not specifically say that the jury could not consider the evidence in fixing damages. Thus, the instruction to disregard the evidence was not as all-encompassing as it should have been. See Greear v. Noland Co., 1955, 197 Va. 233, 89 S.E.2d 49. Fourth, the trial judge's statement was directed at counsel and not to the jury. Although made in the presence of the jury, the statement was not made when the jury's attention was most directly on the court. Cf. Jones v. United States Mutual Acc. Ass'n, 1894, 92 Iowa 652, 61 N.W. 485, 489. Fifth, there is some doubt whether an instruction on the part of the trial judge can effectively remove improperly admitted evidence from the jury's consideration. "Indeed, the judge's cautionary instruction may do more harm than good: It may emphasize the jury's awareness of the censured remark—as in the story, by Mark Twain, of the boy told to stand in the corner and not think of a white elephant." Frank, J. dissenting in United States v. Antonelli Fireworks Co., 2 Cir., 1946, 155 F.2d 631, 656.

Finally, we are not unmindful of the fact that the jury returned a verdict of but one dollar. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." Kotteakos v. United States, 1940, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed 1557. It appears likely that the evidence of drinking alcoholic beverages affected the jury's estimate of the decedent's worth and may have brought about the verdict despite the trial judge's instruction.

This case is not dissimilar from Beck v. Wings Field, 3 Cir., 1941, 122 F.2d 114. In that case the plaintiff was injured while landing his plane on the defendant's airfield. The plaintiff contended that the proximate cause of his injuries was the defendant's negligence in maintaining an airfield with a depression in the portion of the field where the plaintiff was landing. The defendant called as a witness another flier in order to testify as to the condition of that portion of the field where the accident occurred. In response to a question as to his familiarity with the scene, the witness stated: "Yes, sir, I cracked up in the same ditch." The Court twice instructed the jury in strong language to disregard this statement but refused to grant a new trial. The jury returned a verdict for the plaintiff to the extent of the damage to his plane but nothing for personal injuries. This Court reversed and granted a new trial. We said (at page 117):

"The remark in this case was not only improper as introducing collateral matter of like general nature which had no proper place in the case but, more than that, it was positively harmful."

We indicated that the harmful effect could not be eradicated by the Court's admonition and held that a mistrial should have been directed.

There remains the question as to whether a new trial should be granted on all issues or limited to the question of damages. 28 U.S.C. § 2106 permits us to " * * * require such further proceedings to be had as may be just under the circumstances." In Gasoline Products Co. v. Champlin Refining Co., 1930, 283 U.S. 494, 51 S.Ct. 513, 515, 75 L.Ed. 1188 the Supreme Court said that we may grant a new trial as to damages only, if the issues are "clearly separable", although in that case it was held on its facts that the issues were not "distinct and separable" and therefore the Supreme Court ordered a new trial on all issues. Federal appellate and district courts have time and again ordered new trials as to damages only, Chester Blast Furnace v. Tug Florence, 3 Cir., 1959, 270 F.2d 846; Washington Gas Light Co. v. Connolly, 1954, 94 U.S.App.D.C. 156, 214 F.2d 254, 256 and cases there cited.

However, this power must be "exercised with caution", Geffen v. Winer, 1957, 100 U.S.App.D.C. 286, 244 F.2d 375, 376. Consequently, when a jury's verdict is obviously the result of a compromise on the questions of liability and damages, it is considered unjust to order a new trial on damages only. Southern Ry. Co. v. Madden, 4 Cir., 1956, 235 F.2d 198, certiorari denied 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244; see Schuerholz v. Roach, 4 Cir., 1932, 58 F.2d 32, certiorari denied Scheurholz v. Roach, 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541; cf. Gasoline Products Co. v. Champlin Refining Co., supra. On the other hand if the error compelling the reversal relates solely to the damage question, the new trial will be restricted to that question. Thompson v. Camp, 6 Cir., 1948, 167 F.2d 733, certiorari denied 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378.

Here we are not presented with a case of compromise where the jury reduced the amount of damages to offset a doubtful question of liability. The jury specifically asked the Court if it could return a verdict "for the plaintiff with no dollar award *because the maintenance would about equal the total earnings?*" (emphasis supplied) The jury simply concluded that there were only nominal damages proved. This may be so, but the plaintiff is entitled to have that question determined without the presence of the evidence relating to drinking alcoholic beverages. Furthermore, it can hardly be contended that the presence of this evidence prejudiced the City of Chester on the question of liability. If anything it lessened the plaintiff's chances of establishing liability.

Our view of the case makes it unnecessary to consider the other questions raised because these questions are not likely to reoccur at the new trial.

█ The Order denying a new trial will be reversed and a new trial granted as to damages only.[8]

8. There is no Federal statute or rule of evidence which would permit the testimony as to drinking in this case and we have accordingly applied the Pennsylvania law which excludes such evidence. Wright v. Wilson, 3 Cir., 1946, 154 F.2d 616, 170 A.L.R. 1237.