Commonwealth *v.* Forrey, Appellant.

Argued September 29, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

66

*John C. Youngman,* with him *John C. Gault* and *Candor, Youngman & Gibson,* for appellant.

*Daniel F. Knittle,* Assistant District Attorney, with him *Markin R. Knight,* District Attorney, for appellee.

OPINION BY HIRT, J., November 12, 1952:

Defendant was operating a trailer-truck on West Third Street in the City of Williamsport. A collision with a fire truck occurred when he drove his vehicle into the intersection of West Third and Campbell Streets. The lower court found the defendant guilty of reckless driving in violation of Art. X, §1001(a) of The Vehicle Code, as amended by the Act of August 24, 1951, P. L. 1368, 75 PS §481. In the present appeal from the judgment of sentence by the court it is contended that the testimony is insufficient to convict the defendant of the charge. The question involves a construction of the above section of the Act in the light of the prior legislation which it supplanted.

Section 1001(a) of the 1951 amendment provides: "Reckless driving is unlawful, and, for the purpose of this act, is construed to include the following: (a) Any person who drives any vehicle or street car or trackless trolley omnibus upon a highway carelessly disregarding the rights or safety of others, or in a manner so as to endanger any person or property". In §1001-(a) of the prior amendment of June 29, 1937, P. L. 2329, repealed by the 1951 Act, reckless driving was stated to include the following: "Any person who drives any vehicle or street car or trackless trolley omnibus

upon a highway carelessly and wilfully, or wantonly disregarding the rights or safety of others, or in a manner so as to endanger any person or property".

The 1951 amendment redefined reckless driving by eliminating *wilful* or *wanton* conduct in the operation of a vehicle as an essential element of the offense. But in so doing it is clear that the legislature did not intend to increase a driver's responsibility for ordinary negligence by reclassifying mere negligence as reckless driving. What was contemplated in the language "carelessly disregarding the rights or safety of others or in a manner so as to endanger any person or property" was to set the minimal requisite of the statutory offense of reckless driving at less than wilful and wanton conduct on the one hand and, on the other, something more than ordinary negligence or the mere absence of care under the circumstances.

There is an analogy between the quality of negligence necessary to characterize reckless driving as culpable negligence under the 1951 Act, and the degree of negligence amounting to unlawful conduct which will support a conviction of involuntary manslaughter. *Commonwealth v. Aurick*, 342 Pa. 282, 288, 19 A. 2d 920 clearly distinguished culpable negligence on a charge of involuntary manslaughter, from excusable conduct, as these excerpts from the opinion in that case will demonstrate: " 'The unlawfulness of the act in connection with which the killing occurs is the element which distinguishes involuntary manslaughter from a killing excusable as by accident or misfortune' . . . While the basis of a charge of involuntary manslaughter is the causing of another's death by one's negligent act . . the proof of negligence that will support that charge must be something more than the slight negligence which will support a civil action for damages based on negligence . . . 'The facts must be

such that the fatal consequence of the negligent act could reasonably have been foreseen. It must appear that the death was not the result of misadventure, but the natural and probable result of a reckless or culpably negligent act' ". And further: "On the other hand, the proof of negligence to support a charge of involuntary manslaughter need not be proof of acts . . . exhibiting reckless, wicked and wanton disregard of the safety of others. Negligence of that high degree will support a charge of murder in the second degree, as this court recognized in Commonwealth v. McLaughlin, 293 Pa. 218" 142 A. 213. (Emphasis indicated in the above opinion has been omitted). Cf. also, *Commonwealth v. Mayberry*, 290 Pa. 195, 199, 138 A. 686; *Commonwealth v. Dellcese*, 155 Pa. Superior Ct. 120, 38 A. 2d 494; *Commonwealth v. Stosny*, 152 Pa. Superior Ct. 236, 31 A. 2d 582.

The decisive principles of the above cases have application here. In this State the phrase 'reckless' conduct is used as the equivalent of "culpable negligence, or criminal negligence" so designated in the language of the decisions in other jurisdictions. *Com. v. Gill*, 120 Pa. Superior Ct. 22, 32, 182 A. 103. Reckless driving as included within the unlawful conduct described in the 1951 amendment of §1001(a) is a definition of culpable negligence. Conduct charging a driver with reckless driving amounting to culpable negligence under the 1951 amendment, therefore, need not be wilful or wanton; to sustain the charge however, there must be evidence of negligent acts, amounting to a careless disregard of the rights or safety of others, the consequences of which could reasonably have been foreseen by the driver of the vehicle. And if the damages caused by the driver are the natural, probable and foreseeable result of his careless disregard of the rights of others in the operation of the vehicle, and not misad-

venture merely, the driver is culpably negligent and guilty of the charge of reckless driving under the 1951 amendment. This conclusion is consistent with the general statement of Mr. Justice LINN, then Judge LINN, in *Lloyd v. Noakes,* 96 Pa. Superior Ct. 164, 168, in this language: "Recklessness implies conscious appreciation of the probable extent of danger or risk incident to contemplated action . . ."

The testimony clearly convicts the defendant of the charge. In mid-afternoon of November 12, 1951, a clear dry day, an alarm was received in the fire station at Second and Campbell Streets in Williamsport. One of the firemen immediately, by means of a mechanical device turned on the automatically operating blinker lights on the traffic signals at all intersections in that fire district. By that means the operation of the red and green lights in the devices directing traffic was suspended and instead the amber light "blinked" on and off intermittently at short intervals. The fire truck responding to the alarm was driven from the station house northwardly in Campbell Street at a speed not exceeding 20 miles per hour. At that time the defendant in his tractor-truck, 39½ feet in length, was proceeding eastwardly in Third Street. He noted the blinking light at Maynard Street, one block west of Campbell Street and went through that intersection. And he also observed the blinking amber light as he approached Campbell Street. A rotary light on the fire truck was in operation and a siren was sounded continuously from the time the truck left the fire station. Defendant may be excused from not hearing the siren because of the noise of his engine in the closed cab of the tractor. But his admission that he could not see the fire truck approaching from his right, because his view was obstructed, but that he nevertheless drove blindly into the intersection, convicts him

of more than ordinary negligence under the circumstances. There were three automobiles proceeding eastwardly in front of defendant's vehicle and as they approached Campbell Street they pulled to the right and stopped. Their action in so doing coupled with the cautionary signal of the blinking lights at both Maynard Street and Campbell Street was sufficient warning to the defendant of the danger in failing to approach the latter street with his tractor under control and to observe approaching traffic before entering the intersection. Nevertheless he drove his tractor-truck directly into the path of the fire truck in the intersection. That defendant himself associated the blinking lights with a fire, but nevertheless rashly took a chance in proceeding into the intersection, despite the warning of his senses, is made clear from his own admission: "Well, they [the traffic lights] were blinking when I came through the Maynard Street intersection and I thought the fire engine was already out". Defendant therefore was chargeable with culpable negligence, convicting him of reckless driving in violation of the 1951 Act, because of his careless disregard of the rights and safety of others, the consequences of which he reasonably should have foreseen under all of the circumstances.

A witness for the Commonwealth in answer to the question: "Do you have an opinion on the speed of the [defendant's] truck?" stated: "I would say twenty-five to thirty at a guess, but due to the size of the truck it is pretty hard to arrive at that". The court over objection allowed the answer to stand. There was no error in the ruling. A non-expert witness is competent to express an opinion as to the rate of speed of an automobile. *Commonwealth v. Godshalk*, 76 Pa. Superior Ct. 500. Regardless of the choice of words it is clear that the witness intended to express his opinion as to

speed as best he could. The weight of his testimony was for the court and the defendant was not harmed by the estimate of speed given by this witness. Defendant admitted he was traveling "about twenty-miles an hour" and the court found his rate of speed to be "in excess of 18 miles per hour". In any view the speed of defendant's truck was not important since he in effect testified that he could not stop in time to avoid the collision.

Judgment of sentence is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called for compliance with the sentence.