## Scott License

*William L. Huganir* by *A. Lefkoe*, for appellant.
*Daniel L. Quinlan, Jr.*, for Secretary of Revenue.

KNIGHT, P. J., September 10, 1955.—On the hearing of this appeal the following facts were developed:

1. Appellant resides in Norristown and was the holder of an operator's license for the year 1955.

2. On January 1, 1955, at 5:30 a.m., the automobile that appellant was driving collided with a parked car on Butler Pike in this county.

3. Appellant "dozed off" and his car struck a car parked on its extreme right hand side of the road.

4. Appellant had a hearing before a representative of the Secretary of Revenue and his operating privilege was suspended for two months for "reckless driving."

5. The loss of his operating privilege will result in some inconvenience to appellant.

## Discussion

The testimony in this case leaves much to be desired. The accident happened at 5:30 a.m. on January 1, a holiday. Appellant testified that he was leaving his home when the accident happened, but what he was doing out at that time of the morning does not appear. He does not say what he was doing on the night before, which was New Year's Eve, a traditional time for letting go a bit. He does say he had not been drinking that morning.

Appellant frankly admits that he was asleep when the car he was driving crashed into the parked vehicle. That he was negligent is obvious and the only question is whether this constituted simple negligence or whether it was more than simple negligence and can properly be termed reckless driving.

"The 1951 amendment (August 24, P. L. 1368, 75 PS §481) redefined reckless driving by eliminating wilful or wanton conduct in the operation of a vehicle as an essential element of the offense. But in so doing it is clear that the legislature did not intend to increase a driver's responsibility for ordinary negligence by reclassifying mere negligence as reckless driving.

"What was contemplated in the language 'carelessly disregarding the rights or safety of others or in a manner so as to endanger any person or property' was to set the minimal requisite of the statutory offense of reckless driving at less than wilful and wanton conduct on the one hand and, on the other, something more than ordinary negligence or the mere absence of care under the circumstances": Commonwealth v. Forrey, 172 Pa. Superior Ct. 65 (1952).

Judge Linn, in Lloyd v. Noakes, 96 Pa. Superior Ct. 164, made this statement: "Recklessness implies conscious appreciation of the probable extent of danger or risk incident to contemplated action. . . ."

A driver asleep has no appreciation of the probable extent of danger and no one will say that a sleeping driver realizes the extent of the danger incident to driving a car in that condition.

Sleep, however, does not come over one with the suddenness of an epileptic fit, or a serious heart attack. "Before sleep there is drowsiness and before drowsiness there is usually great fatigue or at least a *desire* to sleep": Chief Justice Maxey, in Bernosky v. Greff, 350 Pa. 59 (1944).

Certainly a driver knows that if he falls asleep at the wheel he loses control of his car and may endanger the person and property of other users of the highway.

In a leading case, Blood v. Adams, 269 Mass. 480, 169 N. E. 412, a Massachusetts court said: "In the exercise of ordinary care an operator of an automobile must be able to anticipate what is coming, to see what is present and to remember what is past. Voluntarily to drive an automobile on a public street at any time of day or night with eyes closed, or to yield to sleep while operating such kind of dangerous machine as is an automobile on a public highway, is to be guilty of a degree of negligence exceeding lack of ordinary care, and is a manifestation of recklessness. . . ."

When this appellant felt himself getting drowsy, he should have pulled off the road and stopped for he knew that if he "dozed off" his car might well do injury to himself or other users of the highway. In our opinion the conduct of appellant constituted reckless driving within the meaning of the Pennsylvania statute.

And now, September 10, 1955, the appeal is dismissed, the decision of the Secretary of Revenue is affirmed and the operating privilege of Lawrence McCoy Scott is suspended for a two months period from September 12, 1955.