Commonwealth *v.* Vink, Appellant.

Argued June 13, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*Rudolph M. Wertime,* for appellant.

*Jay L. Benedict, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., September 16, 1960:

This case arises as the result of an information made before a justice of the peace by an officer of the Pennsylvania State Police charging that John M. Vink unlawfully operated a tractor-trailer upon the Pennsylvania Turnpike in Metal Township, Franklin County, in violation of Section 1001 of The Vehicle Code,[1] which proscribes reckless driving, in that Vink "did then and there push another truck-tractor and semi-trailer on the main travelable portion of the highway". Vink waived a hearing before the justice of the peace, and posted cash bail for his appearance before the court of quarter sessions. At the hearing on October 21, 1959, a demurrer to the evidence was overruled. Vink was adjudged guilty and sentenced to pay a fine and the costs of prosecution. This appeal followed.

While on routine patrol west at about 8:00 A.M. on March 18, 1959, the officer came upon a disabled tractor-

---

[1] Act of May 1, 1929, P. L. 905, section 1001, as amended, 75 P.S. 481. The Vehicle Code of 1959, Act No. 32, effective July 1, 1959, made no change in the language of this section.

trailer, operated by Mathew Karcher for Daniels Motor Freight, facing west and parked near the edge of the concrete roadway at a point where there was a narrow berm. After talking with Karcher, the officer radioed the Turnpike maintenance shed at Burnt Cabins and requested that warning signs be placed at the rear of the tractor-trailer until it could be moved. In response to the officer's request, the maintenance foreman, Oakman, proceeded to the scene. He was operating a Turnpike half-ton truck, orange in color, having mounted on the top thereof a rotating flasher light. Appellant, also operating a tractor-trailer for Daniels Motor Freight, had meanwhile arrived at the scene and prepared to render assistance. Appellant proposed to Oakman that the disabled tractor-trailer should be pushed farther west to a point where there was a wider berm. Appellant then proceeded to push Karcher's tractor-trailer in the right lane of traffic at a speed of about twelve miles per hour. As a safety measure, Oakman followed in the Turnpike truck with the red flasher light in operation. The weather was clear and the roadway dry, straight, and almost level. While there was apparently no other west-bound traffic, operators of vehicles approaching from the east could readily have observed the Turnpike truck with flashing red light, and there was ample room to pass the two tractor-trailers in the left lane. Returning on patrol east, the officer discovered what was occurring, and signaled the operators to stop. They pulled to the side of the Turnpike at a point where there was a wider berm, the total distance traveled being less than one-half mile.

The statutory language with which we are here concerned provides that reckless driving "is construed to include the following: "(a) Any person who drives any vehicle . . . upon a highway carelessly disregarding the rights or safety of others, or in a manner so as to endanger any person or property". The position of

the Commonwealth, sustained by the court below, is that appellant's conduct constituted "culpable or criminal negligence amounting to a carelss disregard of the rights or safety of others". The appeal is before us on broad certiorari, and we may consider the record to determine whether the conviction is supported by the evidence: *Commonwealth v. Stephens,* 179 Pa. Superior Ct. 255, 115 A. 2d 904. "What is reckless driving depends upon the particular circumstances": *Commonwealth v. Evelyn,* 184 Pa. Superior Ct. 514, 136 A. 2d 158.

In *Commonwealth v. Forrey,* 172 Pa. Superior Ct. 65, 92 A. 2d 233, we held that there is an analogy between the quality of negligence necessary to characterize reckless driving as culpable negligence and the degree of negligence amounting to unlawful conduct which will support a conviction of involuntary manslaughter. In the words of Judge HIRT in the *Forrey* case: "What was contemplated in the language 'carelessly disregarding the rights or safety of others or in a manner so as to endanger any person or property' was to set the minimal requisite of the statutory offense of reckless driving at less than wilful and wanton conduct on the one hand and, on the other, something more than ordinary negligence or the mere absence of care under the circumstances. . . Conduct charging a driver with reckless driving amounting to culpable negligence under the 1951 amendment, therefore, need not be wilful or wanton; to sustain the charge however, there must be evidence of negligent acts, amounting to a careless disregard of the rights or safety of others, the consequences of which could reasonably have been foreseen by the driver of the vehicle".

In the case at bar, there is nothing to justify a charge of careless disregard of the rights or safety of others. President Judge DEPUY correctly stated: "We are bound here by the rules of the criminal law. Crimi-

nal negligence must display a greater degree of fault than where negligence is averred in a civil suit. The criminal rules as to presumption of innocence and reasonable doubt are, of course, applicable". He predicated the conviction on the theory that appellant's conduct "however commendable in some respects, contained serious potentialities of danger . . . inherent in . . . the presence on a traveled lane of such a mammoth and unmaneuverable structure as here involved proceeding at a speed of 12 miles per hour, where motorists are in the habit of going 60 miles per hour . . . On mature reflection, it is hard to see how a court can, no matter how difficult the decision, approve a practice of one tractor-trailer rig pushing another on a high speed highway such as the Turnpike".

The question before us is not whether we approve of the method appellant adopted in attempting to solve the problem at hand, but whether his conduct under the particular circumstances constituted reckless driving. There was no evidence, and the lower court did not find, that there was any deviation or lack of control in the operation of the vehicles. Appellant and Karcher were visually in touch with each other by means of the outside mirror on the latter's tractor. While it was necessary to release air from the brakes of the Karcher vehicle, the testimony of the Commonwealth's own witness shows that it at no time moved away from appellant's vehicle, and that there was no difficulty in stopping when the two vehicles finally pulled off the highway. The record clearly reveals the officer's position that the trailer should be moved to a wider spot. Consequently, appellant's suggestion that he was acting in furtherance of the officer's direction is not without merit.

One incidental matter should be mentioned. Prior to Oakman's arrival at the scene, Vink admittedly made two illegal U-turns. These violations are not charged

in the instant information, the lower court did not base its conviction upon them, and it was conceded by the district attorney at oral argument that they were separate offenses, and not to be considered by us in the disposition of this appeal.

Having reviewed the evidence in the light most favorable to the Commonwealth, and tested its sufficiency, *Commonwealth v. Wright,* 383 Pa. 532, 119 A. 2d 492, we have concluded that the Commonwealth did not meet its burden of proving appellant guilty beyond a reasonable doubt. The demurrer to the evidence should have been sustained. Cf. *Commonwealth v. Fisher,* 189 Pa. Superior Ct. 8, 149 A. 2d 670.

Judgment reversed.

———

DISSENTING OPINION BY WOODSIDE, J.:

It is difficult for me to understand how anyone could doubt the guilt of the appellant in this case. The court below found the defendant guilty. I think he should have been found guilty, but the issue here is not whether *we* would have found him guilty, but whether there was evidence from which the hearing judge *could* find him guilty. Reviewing the evidence in the light most favorable to the Commonwealth, as we must, this is what we learn from it:

While the defendant was operating his tractor-trailer west on the Pennsylvania Turnpike in Franklin County, he was flagged by the driver of a disabled tractor-trailer owned by his employer and stopped along the berm four or five feet from the concrete roadway. The defendant, after passing the disabled truck, made an illegal U turn on the turnpike, travelled east about 200 feet, and made another illegal U turn back into the westbound roadway. He then drove to the rear of the disabled tractor-trailer. The defendant and

the other driver then "bled" the air from the brakes of the disabled tractor-trailer. There is some dispute as to the effect this had upon the vehicle's brakes, but there is no doubt that the vehicle was left with less than normal braking power, and there is evidence from which it could be found that the trailer was left with no brakes and the tractor with only an emergency brake not designed to control a loaded tractor-trailer. With the brakes "bled," the defendant pulled his large tractor-trailer directly back of the disabled tractor-trailer which was a solid box type approximately 36 feet long, eight feet wide and 13 feet high. *Without being able to see ahead,* he then pushed the disabled tractor-trailer approximately four-tenths of a mile at a speed of approximately 12 miles per hour.

There was no emergency. The operator of the disabled truck had sent for help. His truck was four to five feet from the concrete roadway. A turnpike employe had arrived to place warning signals, as is the custom when a disabled vehicle is less than ten feet away from the concrete roadway. The arresting police officer, who had talked to the operator of the disabled truck earlier, told him that if the repairman for which he had sent took the tractor off of the turnpike, he should have the repairman move the trailer to a place where the berm was wider so it would be at least ten feet from the concrete roadway.

The turnpike employe, but not the officer, saw the two U turns which the defendant admits having made. The turns were not mentioned in the information, and the charge of reckless driving referred only to the pushing. At argument the district attorney said that he did not consider the U turns as a part of the case, because no reference was made to them in the information. The majority, adopting the district attorney's position, ignored them. The evidence shows the U

turns were made; the defendant admitted making them. The turns were made for the sole purpose of pushing the disabled tractor-trailer. It was a maneuver at the scene which was involved in the pushing. I think the two U turns were encompassed within the charge of reckless driving, and that we should consider them. See *Commonwealth v. Koons,* 71 Dauph. 142 (1957).

But whether we consider the U turns or not, I think pushing a large loaded tractor-trailer with another tractor-trailer on the turnpike for .4 of a mile without the operator of the motive power being able to see the road ahead was sufficient to enable the court below to find the defendant guilty of reckless driving.

I would affirm.

WATKINS, J., joins in this dissent.