194 A.2d 46 (1963)
John J. VIETRI, Plaintiff Below-Appellant,
v.
Jacqueline V. RUGGERIO, Administratrix of the Estate of Albert A. Ruggerio, Deceased, Defendant Below-Appellee.
Vincent J. DeTORO, Plaintiff Below-Appellant,
v.
Jacqueline V. RUGGERIO, Administratrix of the Estate of Albert A. Ruggerio, Deceased, Defendant Below-Appellee.
Supreme Court of Delaware.
September 9, 1963.
John M. Bader, of Bader & Biggs, Wilmington, for appellant Vietri.
Joseph J. Longobardi, Jr., of Longobardi & Schwartz, and Harvey B. Rubenstein, of Leshem & Rubenstein, Wilmington, for appellant DeToro.
Ernest S. Wilson, Jr., Wilson and Lynam, Wilmington, for appellee.
TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.
*47 CAREY, Justice.
These appeals involve an automobile accident which occurred in Pennsylvania near Renovo on a clear night in September, 1959. Both plaintiffs were passengers in a station wagon driven by Albert Ruggerio, which collided head-on with a car driven by one Keegan. Both plaintiffs were injured and Ruggerio was killed. In the Court below, the two actions brought by plaintiffs were consolidated for trial, at which the jury returned a verdict for the defendant.
Plaintiffs allege error in several respects, towit, refusal to direct a verdict for plaintiffs; allowance of an amendment to the answer charging contributory negligence; submission to the jury of the issue of contributory negligence; and several errors in the charge. These contentions will be considered individually.
At the time of the accident, Ruggerio and his five passengers (including plaintiffs) were on their way to a hunting cabin in Pennsylvania. Vietri was sitting directly behind the driver and DeToro was on the opposite side of the rear seat, with another passenger between the two. The impact with Keegan's car occurred on a mountainous road on Ruggerio's side of the white stripe, which was not precisely in the center of the road but was entirely on Keegan's side of the center. The paved portion was 18 feet wide. There was a shoulder on Keegan's side one foot wide, after which was a guard rail followed by a drop of fifty to seventy-five feet to some railroad tracks. On Ruggerio's side there was a shoulder three feet wide adjacent to which a steep cliff rose upward. Although these were the shoulder widths directly opposite the point of impact, the one on Ruggerio's right varied in width from one to three feet as he approached that point. The road was paved with asphalt. The shoulders were unpaved and apparently made somewhat rough by shale or debris which had fallen from the mountain side. There was a slight downgrade toward Renovo as Ruggerio approached the point of impact. The road contained a slight rise before starting downgrade and a slight curve to the right, followed by a straight stretch. From Keegan's approach there was also a slight curve shortly north of the impact point.
The investigating officer found skid marks made by the Ruggerio vehicle which were 73 feet long and which started directly at the white line and ran slightly diagonal to the right up to the point of impact, at which place they were ten inches from the white line. He figured that the extreme left edge of Ruggerio's vehicle was therefore only one inch from the white line because of the overhang of the fender, and its extreme right edge twenty-eight inches from the right edge of the pavement. He also figured that Keegan's car *48 was twenty-one inches across the white line. Ruggerio's car came to a final stop thirty feet beyond that point, facing in the opposite direction from the way he had been proceeding. The officer estimated the safe and prudent speed as 45 to 50 miles per hour, the posted speed limit being 50 miles per hour. There was considerable conflict in the testimony as to Ruggerio's speed, the estimates ranging from 60 miles per hour or more to a considerably slower rate.
The case was tried according to the law of Pennsylvania which has no "guest statute" similar to T. 21 Del.C. § 6101 barring recovery by a guest passenger in the absence of wilful or wanton conduct.
At the trial, plaintiffs moved for a directed verdict on liability, or in the alternative on negligence and proximate cause, or in the alternative on negligence only. The Court denied that application on the ground that these issues were all matters for the jury. We think the Court was correct in doing so.
The allegations of negligence were seven in number, two of which were failure to keep proper control of the vehicle, and violation of 75 P.S. § 1004 and § 1023 by failing to drive on the right and as near the righthand side of the highway as was reasonably possible. Plaintiffs say that the jury should have been told that Ruggerio was guilty of negligence in those two respects. In considering this contention, it is important to keep in mind that there is no evidence in the record concerning the movements of the Keegan car prior to the impact. All we know is that it came around a slight curve some distance north of that point and that it was twenty-one inches across the line when it struck Ruggerio's car. Moreover, there is no evidence from which its movements can be deduced. We have no idea, for example, just where it was when it came across the white line; whether it was ever completely over into Ruggerio's lane; its rate of speed; nor the angle of its path with reference to the white line prior to impact. It is difficult to judge the reasonableness of Ruggerio's conduct without knowing what Keegan did. The possibility exists that Keegan's car was partly or entirely in the wrong lane all the way from the curve. What should a reasonable prudent driver do under these conditions? Conceivably, Keegan's driving may have been so erratic that Ruggerio found himself in an emergency situation through no fault of his own. Without more knowledge of the situation thus facing him, we cannot say as a matter of law that Ruggerio's movements were due to a lack of proper control or that his failure to be on the extreme right side of the road was necessarily unjustified. The officer's statement that there was ample room for Ruggerio to have pulled to the extreme right edge of the highway and thus have avoided the accident does not necessarily mean there was ample time, nor does it necessarily lead to the inference of negligence on Ruggerio's part. Any possible presumption of due care on Keegan's part is no stronger than a like presumption in Ruggerio's favor. Our opinion is that plaintiffs were not entitled to a directed verdict on the issue of negligence. It follows that they were not entitled to such a direction on the issues of proximate cause and liability.
The plaintiffs contend that the Court below erred in granting a charge on contributory negligence. This contention may be thus summarized: (1) there was no evidence of negligence on their part; (2) there was no evidence that anything they did or failed to do contributed to the accident; (3) the defendant waived this defense by her failure to plead it prior to trial. We take up these contentions in that order.
Although the testimony was in conflict, there was evidence to justify the jury in finding these facts: A car had come up in back of Ruggerio and had followed him rather closely for two or three miles. He apparently found this annoying. Finally, at the suggestion of the passenger DiSabatino, Ruggerio pulled aside and allowed *49 the other car to pass. After it had done so, Ruggerio said, "If I only had my other car here, I would show that fellow a trick or two". At this point Vietri glanced at the speedometer and saw that it registered almost sixty miles per hour. DeToro then said, "Go get him, Snookie", whereupon Ruggerio immediately speeded up to try to catch the other car. The accident occurred a mile or mile and a half later. During the meantime, nobody in the car objected to the speed or asked Ruggerio to slow down.
If the jury believed this version, it could have found that Ruggerio's excessive speed was a proximate cause of the accident and could have concluded that a reasonable prudent passenger, knowing that speed and knowing the nature of the road, should have voiced an objection. It could justifiably have found that Vietri's silence and DeToro's encouraging words constituted negligence. Reeves v. Winslow, 394 Pa. 291, 147 A.2d 357; Friedrich v. Baltimore & O. R. Co., 360 Pa. 515, 62 A.2d 760. Assuming that the jury found such negligence, it clearly was a jury question whether that negligence contributed to the accident. In this connection, we note that the law of Pennsylvania with respect to contributory negligence does not require that it be a proximate cause, but only that it contribute in some degree to the injury. In Crane v. Neal, 389 Pa. 329, 132 A.2d 675, the Pennsylvania Supreme Court had this so say:
"Courts must be careful not to confuse or equate contributory negligence with proximate cause. The trial Judge committed reversible error in charging the jury that negligence on the part of Crane and Dean would not bar their recovery unless it was a proximate cause of the accident. Although broader language may be found in a few cases, `There is not the slightest doubt (under the law of Pennsylvania) that a plaintiff is guilty of contributory negligence and cannot recover if his negligence contributed in any degree, however slight, to the injury:'
* * * * * *
"A different test or legal standard prevails in Pennsylvania between negligence and contributory negligence.
* * * * * *
"`To recover a verdict against a defendant because of his negligence the jury must find that the alleged negligence was the proximate cause of the injury; but as respects a plaintiff, suing another for damages alleged to have been caused by the latter's negligence, the rule in Pennsylvania is that he cannot recover if his own negligence contributed in any degree to the accident and injury.'"
The defense of contributory negligence was first raised a few weeks before the trial by a motion to amend the answer. At that time, the Court deferred decision on the application until the trial. The evidence pertaining to it was admitted without objection, and in fact some of it was presented by the plaintiffs themselves. After all the evidence was in, the motion to amend was renewed and granted. Plaintiffs do not suggest any surprise. Their only argument is that the defense was waived under Rule 12(h) and that the amendment should not have been allowed because of inexcusable delay in pleading it. Obviously, Rule 12 does not automatically prevent an amendment under Rule 15; the allowance of the amendment is sometimes obligatory, 3 Moore's Federal Practice 848. Assuming, however, that it was discretionary in this case, we cannot say that the trial Court abused that discretion. Bellanca Corporation v. Bellanca, 3 Storey 378, 169 A.2d 620.
We are therefore of the opinion that the Court below committed no reversible error in submitting the question of contributory negligence to the jury.
The plaintiffs contend that the Court erred in the substance of its charge in two *50 respects: first, it should have instructed the jury that contributory negligence is not a defense to wilful or wanton conduct on a defendant's part, and, second, it omitted from the charge certain language contained in plaintiffs prayer on contributory negligence.
We find no merit in the first of these contentions because we think the evidence did not justify an instruction on wilful or wanton conduct. As we understand the Pennsylvania cases, their definition of wanton conduct is not materially different from that given in McHugh v. Brown, 11 Terry 154, 125 A.2d 583, and several other Delaware cases. They have said that wanton conduct is something more than gross negligence, Kasanovich v. George, 348 Pa. 199, 34 A.2d 523. They have also said that it is something more than "reckless driving" as defined in 75 P.S. § 1001 (1), Commonwealth v. Forrey, 172 Pa. Super. 65, 92 A.2d 233. Ruggerio's actions may have been negligent, and may have been even grossly negligent, but they were not wanton, in our opinion.
We likewise find no merit in the second contention. In our opinion, the charge on contributory negligence was correct and adequate to the extent justified by the evidence.
Plaintiffs remaining objections to the charge are three in number. One is that their prayer on the duty of control was not given precisely as requested. We find that the substance of that prayer was in fact given. No prejudicial harm resulted from the failure to insert it at the particular point in the charge which plaintiffs preferred. Another objection is that the "emergency" doctrine was not fully covered. On the contrary, we think the substance of plaintiffs' prayer was included. The final objection is that the jury should not have been told anything about a presumption of due care on the part of a decedent. The existence of such a presumption is part of the law of Pennsylvania, Moore v. Esso Standard Oil Co., 364 Pa. 343, 72 A.2d 117; Cf. Odgers v. Clark, 2 Terry 232, 19 A.2d 724. We see no reason why the Court should not say so to the jury.
The judgment entered below will be affirmed.