J-S61009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARIN JON RILEY, | |
| Appellant | No. 106 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 24, 2017
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0000222-2016

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 17, 2018**

Appellant, Darin Jon Riley, appeals from the judgment of sentence of six months' probation and fines, imposed after he was convicted, following a non-jury trial, of driving under the influence of alcohol - general impairment (DUI), 75 Pa.C.S. § 3802(a)(1), and careless driving, 75 Pa.C.S. § 3714.  We affirm.

Appellant raises two issues for our review:

I.  Whether there was sufficient evidence to support the [t]rial [c]ourt's finding of guilt[] on Count 1, DUI General Impairment, when [the] evidence failed to establish that [] Appellant was incapable of safe driving[?]

II. Whether there was sufficient evidence to support the [t]rial [c]ourt's finding of guilt on Count 3, Careless Driving, when the evidence failed to establish that [] Appellant operated his vehicle with careless disregard for the safety of others or property?

Appellant's Brief at 4.

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough opinion of the Honorable Roger N. Nanovic of the Court of Common Pleas of Carbon County. We conclude that Judge Nanovic's well-reasoned opinion accurately disposes of the issues presented by Appellant. **See** Trial Court Opinion (TCO), 2/8/18, at 1-16.[1] Accordingly, we adopt Judge Nanovic's opinion as our own and affirm the judgment of sentence on that basis.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/18

---

[1] We recognize, however, that Judge Nanovic incorrectly states that Appellant was stopped at 6:30 **a.m.**, **see** TCO at 11 n. 7., when the record demonstrates that Appellant was stopped at 6:30 **p.m.**, **see** N.T. Trial, 5/8/17, at 10. According to Appellant, this mistake calls into question the trial court's factual finding that "it was … dusk outside" at the time of the stop. Appellant's Brief at 18. Appellant is incorrect. The arresting officer testified that it was dusk at 6:30 p.m. when he stopped Appellant's vehicle. **See** N.T. Trial at 17. Additionally, the video recording of the stop, taken by the officer's dashboard camera, corroborates the officer's testimony. Therefore, the record supports Judge Nanovic's conclusion that it was dusk when the stop occurred.

[2] We do not adopt the portion of Judge Nanovic's opinion which addresses a third issue raised by Appellant in his Pa.R.A.P. 1925(b) concise statement, but which Appellant has abandoned on appeal to this Court. **See** TCO at 17-20.

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION - LAW

COMMONWEALTH OF PENNSYLVANIA   :
                               :
              v.               :    No. CR-222-2016
                               :
DARRIN JON RILEY,              :
          Defendant            :

Cynthia Dyrda-Hatton, Esquire      Counsel for the Commonwealth
Assistant District Attorney

Matthew J. Rapa, Esquire      Counsel for the Defendant

MEMORANDUM OPINION

Nanovic, P.J. - February 8, 2018

Darren Jon Riley ("Defendant") has appealed from the judgment of sentence entered on October 24, 2017, for his convictions of driving under the influence (general impairment)[1] and careless driving[2] following a nonjury trial held on May 8, 2017. For the reasons which follow, we conclude Defendant's grounds for appeal are without merit.

PROCEDURAL AND FACTUAL BACKGROUND

On September 4, 2015, at approximately 6:30 A.M., Trooper Mark E. Bower of the Pennsylvania State Police initiated a traffic stop of a vehicle being driven by Defendant eastbound on State Route 248 for excessive tinting of the front passenger and driver side windows which obstructed his view into the interior

---

[1] 75 Pa.C.S.A. § 3802(a)(1).
[2] 75 Pa.C.S.A. § 3714(a).

[FN-3-18]
1

of the vehicle. (N.T., 5/8/17, pp.9-10). After Trooper Bower activated his overhead lights, Defendant exited Route 248 at the Bowmanstown Exit and brought his vehicle to a stop on the shoulder of East Lizard Creek Road. Trooper Bower noted that there was a delayed response between when he activated his lights and Defendant pulled over. (N.T., 5/8/17, p.40).

Trooper Bower requested to see Defendant's driver's license, registration and proof of insurance, which Defendant provided. (N.T., 5/8/17, pp.12, 29, 44). During this initial contact, Trooper Bower detected a strong odor of alcohol emanating from the vehicle, noticed that Defendant's eyes were glassy and bloodshot, and that his clothing was a little disheveled, and observed a front seat female passenger in Defendant's vehicle. (N.T., 5/8/17, pp.12-14). In response to Trooper Bower's inquiry from where Defendant was coming, Defendant stated he was coming from the BoatYard Bar where he admitted to having two beers with dinner. (N.T., 5/8/17, p.13). At this point, Trooper Bower noted that Defendant's speech was slightly slurred and hesitant. (N.T., 5/8/17, pp.13, 27, 58-59).

After verifying through use of the computer in his patrol car the information Defendant had provided, Trooper Bower returned Defendant's documentation and requested Defendant to

exit his vehicle to conduct field sobriety tests. As Defendant did so, Trooper Bower noted that Defendant had difficulty getting out of the vehicle - he held on to the vehicle's door for support - and was unsteady on his feet. (N.T., 5/8/17, pp.15, 29, 47). Defendant commented to the Trooper that he had a bad back. (N.T., 5/8/17, p.15).

Trooper Bower had Defendant walk to the rear of Defendant's vehicle - to the area between Defendant's vehicle and the police cruiser - to perform the field sobriety tests. As Trooper Bower followed Defendant, the strong odor of alcohol Trooper Bower detected earlier was now noted to be coming directly from Defendant and Defendant was observed having some difficulty walking around the rear of his vehicle. (N.T., 5/8/17, pp.15, 29-30, 50). The area Trooper Bower had selected for the field sobriety tests was dry, flat, and even, and there were no adverse weather conditions. (N.T., 5/8/17, pp.17-18).

In addition to administering a horizontal gaze nystagmus (HGN) test and portable breath test (PBT), both of whose results were inadmissible and therefore not disclosed at trial, Trooper Bower instructed and demonstrated for Defendant the "walk and turn" and "one-legged stand" field sobriety tests. (N.T., 5/8/17, pp.18-22). During Defendant's performance of each of these tests, Trooper Bower noted multiple clues of intoxication,

including Defendant's failure to follow instructions, loss of balance, swaying, walking off the line, and walking backwards twice to maintain his balance. (N.T., 5/8/17, pp.30-31, 51-56; Commonwealth Exhibit No.1 – Intoxication Worksheet).[3] Several times during these tests, Defendant again advised Trooper Bower that he had a bad back. (N.T., 5/8/17, pp.17, 21-22, 31, 47).

Trooper Bower next placed Defendant under arrest for driving under the influence and transported Defendant to the Palmerton Hospital for chemical testing of Defendant's blood which Defendant consented to.

Trooper Bower was the only witness at the trial held on May 8, 2017. Defendant was present but did not testify. At this trial, Trooper Bower expressed his opinion, based in part on his training in administering field sobriety tests and contact with

---

[3] With respect to these two field sobriety tests, in addition to describing his observations elsewhere throughout his testimony, Trooper Bower testified as follows:

Q. ..As a result of doing the walk-and-turn, what were your observations and did you notice that there [were] any clues noted?
A. Yes. Based on the walk-and-turn, the individual clearly did an improper turn. He stopped walking, took two steps back. He missed heel to toe. He stepped off the line and he raised his arms, and if you raise your arms, it means you can't keep your balance because the one thing we look at as far as keeping your balance is if you keep your hands at your side.
Q. And the one-leg stand test?
A. The one-leg stand, he swayed and he puts his foot down. He actually raised his arm once. I did not check that, but he did raise his arm in the beginning. I had to re-tell him to put his hands down by his side.

(N.T., 5/8/17, pp.32-33).

other individuals who were determined to be under the influence, that Defendant was under the influence of alcohol at the time of the traffic stop and was incapable of safe driving. (N.T., 5/8/17, pp.7-9, 33-34, 62-63). Trooper Bower further testified that Defendant's body movements and speech at the time of trial exhibited no difficulty with balance or slurred speech, in contrast to what he had observed at the time of the stop. (N.T., 5/8/17, pp.25-26). Finally, a DVD of the stop taken from a camera mounted on the dash board of Trooper Bower's cruiser was placed in evidence and viewed by the court during the trial.

At the conclusion of Defendant's bench trial, we found Defendant guilty of the charges of driving under the influence of alcohol to a degree which rendered him incapable of safe driving, careless driving and windshield obstruction (sun screening).[4] Defendant was acquitted of the summary offense of reckless driving.[5] On October 24, 2017, Defendant was given a six-month probationary sentence and a fine of $300.00 for the driving under the influence offense and fined $25.00 each for careless driving and driving with a windshield obstruction. No

---

[4] 75 Pa.C.S.A. § 4524(e)(1). This conviction is not at issue in the instant appeal.
[5] 75 Pa.C.S.A. § 3736(a). Additionally, at the outset of trial the Commonwealth elected not to pursue a second driving under the influence offense, having a blood alcohol concentration of at least 0.08 percent but less than 0.10 percent within two hours of driving (75 Pa.C.S.A. § 3802(a)(2)), the results of Defendant's blood alcohol content having been suppressed pursuant to our order dated September 13, 2016, on the basis of a Birchfield motion.

post-sentence motions were filed. Defendant's direct appeal to the Pennsylvania Superior Court was filed on November 16, 2017.

Defendant raises two primary issues on appeal: (1) that the evidence was insufficient to sustain his convictions for driving under the influence and careless driving, and (2) that the court "improperly shifted the burden of proof to him when determining whether back injury affected his performance during field sobriety testing." *See* Defendant's Concise Statement of Matters Complained of on Appeal filed on December 18, 2017.[6]

## DISCUSSION

### Sufficiency of the Evidence

The elements of the offense of driving under the influence of alcohol (general impairment) require the Commonwealth to prove that the Defendant "was driving, operating or in actual physical control of the movement of a vehicle during the time when he [ ] was rendered incapable of safely driving due to the consumption of alcohol." Commonwealth v. Teems, 74 A.3d 142, 145 (Pa.Super. 2013) (quoting Commonwealth v. Segida, 985 A.2d 871, 879 (Pa. 2009) (holding that the offense of driving under

---

[6] By order dated November 17, 2017, we directed Defendant to file a concise statement of the matters he intended to raise on appeal within twenty-one days. Although this concise statement was not timely filed within this period, we understand this delay was attributable to delay by the Clerk of Courts' office in entering our order and having it mailed to Defendant's counsel. Accordingly, Defendant should not be held responsible for the delay in filing his concise statement, and the issues raised therein should be addressed.

the influence set forth at 75 Pa.C.S.A. § 3802(a)(1) is an "at the time of driving" offense)), *appeal* denied, 79 A.3d 1098 (Pa. 2013). For careless driving, the elements are that the Defendant was driving a vehicle in careless disregard for the safety of persons or property. 75 Pa.C.S.A. § 3714(a).

The standard of review for a sufficiency claim is well-settled:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Teems, 74 A.3d at 144-45 (quoting Commonwealth v. Toland, 995 A.2d 1242, 1245 (Pa.Super. 2010)).

> It is not within the province of [the reviewing court] to re-weigh the evidence and substitute [its] judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

Commonwealth v. Mobley, 14 A.3d 887, 889-90 (Pa.Super. 2011) (quoting Commonwealth v. Mollett, 5 A.3d 291, 313 (Pa.Super. 2010)).

### (1) Driving Under the Influence

Here, Defendant was convicted of driving while under the influence of alcohol to a degree that rendered him incapable of safe driving. 75 Pa.C.S.A. § 3802(a)(1).

> In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him or her incapable of safe driving. To establish the second element, it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, *such as failing to pass a field sobriety test*, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

Commonwealth v. Smith, 831 A.2d 636, 638 (Pa.Super. 2003) (emphasis added) (quoting Commonwealth v. Palmer, 751 A.2d 223, 228 (Pa.Super. 2000)), *appeal denied*, 841 A.2d 531 (Pa. 2003).

Additionally,

> [w]ith respect to the type, quantum, and quality of evidence required to prove a general

impairment violation under Section 3802(a)(1), the Pennsylvania Supreme Court in _Segida_ continued:

> Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

_Commonwealth v. Teems_, 74 A.3d at 145 (quoting _Commonwealth v. Segida_, 985 A.2d at 879)).

[FN-3-18]
9

In this case, there is no evidence of erratic driving or the occurrence of driving infractions before the traffic stop. (N.T., 5/8/17, pp.38-39, 41-42, 62). Notwithstanding the absence of such evidence, it needs to be emphasized that "[e]vidence of erratic driving is not a necessary precursor to a finding of guilt under the relevant statute." Commonwealth v. Mobley, 14 A.3d at 890. Rather, "[t]he Commonwealth may prove that a person is incapable of driving through the failure of a field sobriety test." Id.

In Mobley, the Superior Court

> found the evidence sufficient to prove Mobley was incapable of safely driving his vehicle, even though he was not driving erratically before being stopped by police, where Mobley failed four field sobriety tests, was disoriented, exhibited slow speech, and refused to submit to a chemical blood test. Additionally, an odor of alcohol permeated from Mobley's person when he exited his vehicle.

Commonwealth v. Brown, 2017 WL 2610029 *3 (Pa.Super. 2017) (citations omitted). In Mobley, the defendant also failed to come to a complete stop at a stop sign. Commonwealth v. Mobley, 14 A.3d at 889.

By comparison, and similar to the facts in Mobley, here Defendant failed two field sobriety tests, exhibited slurred and hesitant speech, had glassy and bloodshot eyes, and had a strong odor of alcohol emanating from his vehicle and from his person

after he exited the vehicle. Additional facts not present in Mobley, but present here, include Trooper Bower's observations that Defendant needed to hold onto the car door to exit his vehicle and was unsteady on his feet before any field sobriety tests were conducted; that when Trooper Bower requested Defendant's license and registration, Defendant had difficulty in retrieving these items and rather than pulling these cards from his wallet as was requested, Defendant handed the trooper his entire wallet, which Trooper Bower interpreted as a cue that Defendant would have difficulty retrieving the items alone (N.T., 5/8/17, pp.12, 28-29, 44, 59); that Defendant admitted to consuming two beers with dinner before the stop;[7] and that the

---

[7] Although no evidence was elicited as to when the Defendant had dinner, the stop was at 6:30 A.M. and, in all likelihood, at least six or seven hours after Defendant would have had dinner. If this is true, this clearly throws doubt either on how much Defendant had to drink or when he last consumed alcohol, or perhaps both.

In the context of inferences to be made from circumstantial evidence, the Pennsylvania Supreme Court in Segida in reversing the Superior Court's determination that the evidence was insufficient to establish when the Defendant had been driving and hence whether he was incapable of driving safely at the time that he was driving, stated that the fact-finder is not required to suspend common sense and that the arresting officer's testimony that "it was 'doubtful' that the accident had occurred two or three hours or even ten minutes prior to his arrival on the scene 'due to traffic on the road,'" was sufficient to establish that Defendant had been driving his vehicle shortly before the officer's arrival. This inference, combined with evidence of the strong odor of alcohol coming from Defendant, Defendant's bad performance on three field sobriety tests, Defendant's high blood alcohol concentration, and the occurrence of a one vehicle motor vehicle accident, was found sufficient to prove that the defendant drove when he was incapable of doing so safely. 985 A.2d at 880-81. Expounding on inferences to be made from circumstantial evidence, the Pennsylvania Superior Court in Commonwealth v. Teems stated:

> We remind [Defendant], however, that our jurisprudence does not require fact-finders to suspend their powers of logical reasoning or

arresting officer, Trooper Bower, expressly opined Defendant was under the influence and incapable of safe driving. Based on all of this evidence and our acceptance of Trooper Bower's opinion testimony as an experienced, trained officer who had the opportunity to observe Defendant up close, we found the evidence sufficient to establish beyond a reasonable doubt that Defendant drove while incapable of safely driving, and that such was due to the consumption of alcohol.[8]

## (2) Careless Driving

The summary offense of careless driving is defined in Section 3714 of the Motor Vehicle Code as follows: "Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714. The only proof necessary to establish this offense is that the defendant drove a vehicle in careless disregard for the safety and property of others.

---

common sense in the absence of direct evidence. Instead, juries may make reasonable inferences from circumstantial evidence introduced at trial.

74 A.3d 142, 148 (Pa.Super. 2013) (citing Segida).

[8] To the extent Defendant seeks to raise a weight of the evidence claim by contending "[t]he court erred in failing to properly review and give weight to the video footage entered into evidence which did not depict the events Trooper Bower claimed to have observed," (see Concise Statement of Matters Complained of on Appeal, paragraph 10), a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or in an oral motion at sentencing. Commonwealth v. Giron, 155 A.3d 635, 638 (Pa.Super. 2017). Since Defendant did not file post-sentence motions or preserve his challenge to the weight of the evidence in a written motion or orally at sentencing, the claim has been waived, and requires no further discussion. Id. at 638.

Matter of Huff, 582 A.2d 1093, 1097 (Pa.Super. 1990) (*en banc*), affirmed, 604 A.2d 1026 (Pa. 1992). "[T]o sustain the charge however, there must be evidence of negligent acts, amounting to a careless disregard of the rights or safety of others, the consequences of which could reasonably have been foreseen by the driver of the vehicle." Commonwealth v. Podrasky, 378 A.2d 450, 452 (Pa.Super. 1977) (*en banc*) (quoting Commonwealth v. Forrey, 92 A.2d 233, 234 (Pa.Super. 1952)). "There is no causation or particular result required by the statute." Commonwealth v. Wood, 475 A.2d 834, 836 (Pa.Super. 1984).

The offense of careless driving has two elements: an *actus reus* - driving a vehicle; and a *mens rea* - careless disregard. Commonwealth v. Wood, 475 A.2d at 836. The *mens rea* requirement, careless disregard, "implies 'less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances.'" Commonwealth v. Gezovich, 7 A.3d 300, 301 (Pa.Super. 2010).[9] Ordinary negligence of the type necessary to prove tort liability will not sustain a criminal conviction since such does not include the culpability

---

[9] As noted in Commonwealth v. Gezovich, even though the offense under review in Matter of Huff, Podrasky, and Wood was then called "reckless driving," the applicable *mens rea* as interpreted in these cases was that of "careless disregard." 7 A.3d at 301 n.1. Since these three cases were decided, the new offense of reckless driving requiring a higher level of culpability, "willful or wanton disregard for the safety of persons or property," was established, see 75 Pa.C.S.A. § 3736, with the *mens rea* of "careless disregard" as interpreted in Matter of Huff, Podrasky and Wood, applicable to the offense now known as careless driving as appears in 75 Pa.C.S.A. § 3714.

component of a criminal offense and would offend substantive due process. *See* Commonwealth v. O'Hanlon, 653 A.2d 616, 617-18 (Pa. 1995).

Section 302 of the Crimes Code sets forth the general requirements of criminal culpability. As pertinent here, Section 302 provides:

§ 302. General requirements of culpability.

\* \* \*
(b) Kinds of culpability defined.—

\* \* \*
(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

(4) A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302 (b)(3), (4).

Criminal negligent requires only that the accused "should be aware" of the substantial and unjustifiable risk created by his conduct, not that he is actually aware of such risk. That criminal negligence subjects an offender to criminal liability is justified given that criminal negligence involves a gross deviation from reasonable care "such that it would be shocking to allow the actor's lack of awareness to excuse his actions in the circumstances." Commonwealth v. Heck, 491 A.2d 212, 226 (Pa.Super. 1985), affirmed, 535 A.2d 575 (Pa. 1987). Criminal recklessness, in contrast, requires a recognition, consideration, and conscious disregard of the danger posed by the conduct in question. "While both criminal negligence and recklessness involve 'gross' deviations from reasonable conduct, recklessness includes conscious disregard of a risk whereas criminal negligence is accompanied by lack of awareness of a risk." Commonwealth v. Heck, 491 A.2d at 216. See also Commonwealth v. Wood, 475 A.2d at 836-37 (noting the distinction between "conscious" and "careless" disregard "connotes a definite difference in the intent requirement with a lesser intent required to establish [careless] driving"). It is because of these differing gradations of mens rea that driving under the influence of alcohol unaccompanied by evidence of erratic or unsafe driving does not establish recklessness per se and is

[FN-3-18]
15

insufficient to support a conviction of reckless driving under 75 Pa.C.S.A. § 3736 (a): there must be other tangible indicia of unsafe driving to establish the offender's subjective awareness of the risk which he is charged with having consciously disregarded. *See* Commonwealth v. Jeter, 937 A.2d 466, 467-68 (Pa.Super. 2007).

Here, Defendant was driving a motor vehicle with excessively tinted windows while intoxicated during the early morning hours when it was still dusk outside. In addition to himself, a front seat passenger was present in the car. Even though Defendant may not have known the exact quantity of alcohol he could consume and still legally drive, certainly he should have been aware of the possible consequences and dangers of driving under the influence, and been aware that he was incapable of safe driving. While we agree that the evidence was not sufficient to establish a conviction for reckless driving – that Defendant "consciously disregarded a substantial and unjustifiable risk" of injury to others – we concluded the evidence was sufficient under the totality of the circumstances to establish a "careless disregard" of a substantial and unjustifiable risk of injury to others and that such involved a gross deviation from the standard of care that a reasonable person would observe.

## Burden of Proof

Defendant next argues that we "erred and infringed upon [his] constitutional rights to a presumption of innocence and the right to remain silent, when [we] improperly shifted the burden of proof to him when determining whether back injury affected his performance during field sobriety testing." (Concise Statement of Matters Complained of on Appeal, paragraph 8). Defendant apparently bases this contention on the following remarks made by the court at the conclusion of the evidence in explaining our verdict:

> The Court understands that the defense has raised that several of the items that were clues as identified by Trooper Bower may be attributable to back difficulties that Mr. Riley has, and there was some indication on the video observed by the Court that Mr. Riley did rub his back on occasion and also stretched his back.
>
> There was no evidence presented today as to the nature of any back injury that Mr. Riley has. The Court would need to speculate with respect to that. There was no testimony presented or evidence presented by the passenger in the vehicle being driven by Mr. Riley. The Court does not know who that was other than there was reference in the testimony to the fact it was a woman.

(N.T., 5/8/17, p.82).

Defendant clearly misunderstands the nature of the court's comments. Without dispute, the Commonwealth has an unshifting burden of proving beyond a reasonable doubt all elements of a

[FN-3-18]
17

crime necessary for conviction. Nothing the court said could reasonably be interpreted as detracting from that fundamental precept of due process.

This does not mean, however, that in explaining its decision the court is forbidden from reviewing or commenting upon the strength or weight of the evidence. Defendant made it a point on the morning of his arrest of repeatedly telling Trooper Bower that he had a bad back in an apparent attempt to explain this as the reason why he had difficulty getting out of his car and performing the field sobriety tests. Similarly, at trial such evidence had a tendency to challenge a key piece of the Commonwealth's evidence that Defendant was incapable of safe driving: that Defendant's problems with balance and failure to follow instructions was not due to intoxication, but to a bad back.

The court's comments were directed to the evidence that was presented with respect to Defendant's "bad back," not who had the burden of proving that evidence. As accurately appears in the remarks of the court as to this evidence, neither the nature of Defendant's back problem nor how or why this would necessarily affect his movements, balance or ability to perform field sobriety tests was ever explained. Just because a boy in the woods repeatedly calls "wolf," does not mean there is a

wolf. And just because Defendant repeatedly said he had a bad back and implied that this somehow affected his movements that night, does not mean that it did.

Trooper Bower testified that he took into account Defendant's claim when conducting his tests and evaluating Defendant (N.T., 5/8/17, pp.31-32, 55), and we found, based on the evidence presented, that the Commonwealth proved beyond a reasonable doubt each of the crimes of which Defendant was convicted. See Commonwealth v. Rose, 321 A.2d 880, 884 (Pa. 1974) (Pomeroy, J. plurality) ("[T]he Commonwealth's burden to prove beyond a reasonable doubt all elements of the crime does not require it to disprove a negative."); see also Commonwealth v. Ragan, 652 A.2d 925, 930 (Pa.Super. 1995) (holding the Commonwealth had no burden to disprove defendant's claim that the odor of alcohol on his breath was due to his ingestion of a mouth deodorizer where the defendant, who was convicted of driving under the influence of alcohol, presented no evidence of the source of the odor of alcohol at the time he was stopped), appeal denied, 664 A.2d 540 (Pa. 1995); Commonwealth v. Segida, 985 A.2d at 879, n.6 (holding that the Commonwealth had no burden to prove defendant drank no alcohol after a one-car motor vehicle accident, where defendant, who was convicted of driving under the influence of alcohol, claimed this was a possibility).

## CONCLUSION

For the foregoing reasons, we find no merit to the issues Defendant intends to raise on appeal.

BY THE COURT:

_____ P.J.

FILED
2018 FEB -8 A 11: 51
CARBON COUNTY
CLERK OF COURT
WM. C. MCGINLEY